

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Case:2:13-cr-20039
Judge: Friedman, Bernard A.
MJ: Majzoub, Mona K.
Filed: 01-15-2013 At 04:06 PM
USA V SEALED MATTER (EB)

UNITED STATES OF AMERICA

v.

D-1 MUHAMMAD AAMIR,
D-2 USMAN BUTT,
D-3 HEMAL BHAGAT,
D-4 SYED SHAH,
D-5 TAYYAB AZIZ,
D-6 TARIQ TAHIR, and
D-7 RAQUEL ELLINGTON, aka RICARDO ELLINGTON,

VIO:   18 U.S.C. § 1349
        18 U.S.C. § 1347
        18 U.S.C. § 371
        18 U.S.C. § 2
        18 U.S.C. § 1956
        18 U.S.C. § 982

Defendants.

_____/

## INDICTMENT

THE GRAND JURY CHARGES:

### General Allegations

At all times relevant to this Indictment:

### The Medicare Program

1.      The Medicare program was a federal health care program providing benefits to persons who were over the age of 65 or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services (CMS), a federal agency under the United States Department of Health and Human Services.  Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

2.      Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

3.     The Medicare program included coverage under two primary components, hospital insurance ("Part A") and medical insurance ("Part B"). Part A covered physical therapy, occupational therapy, and skilled nursing services if a facility was certified by CMS as meeting certain requirements. Part B of the Medicare Program covered the cost of physicians' services and other ancillary services not covered by Part A. The home health services at issue in this Indictment were covered by Part A.

4.     National Government Services was the CMS intermediary for Medicare Part A in the state of Michigan. TrustSolutions LLC was the Program Safeguard Contractor for Medicare Part A and Part B in the state of Michigan until April 24, 2012, when it was replaced by Cahaba Safeguard Administrators LLC.

5.     By becoming a participating provider in Medicare, enrolled providers agreed to abide by the policies and procedures, rules, and regulations governing reimbursement. In order to receive Medicare funds, enrolled providers, together with their authorized agents, employees, and contractors, were required to abide by all the provisions of the Social Security Act, the regulations promulgated under the Act, and applicable policies, procedures, rules, and regulations issued by CMS and its authorized agents and contractors.

6.     Upon certification, the medical provider, whether a clinic or an individual, was assigned a provider identification number for billing purposes (referred to as a PIN). When the medical provider rendered a service, the provider submitted a claim for reimbursement to the Medicare contractor/carrier that included the PIN assigned to that medical provider. When an individual medical provider was associated with a clinic, Medicare Part B required that the individual provider number associated with the clinic be placed on the claim submitted to the Medicare contractor.

2

7.      Health care providers were given and/or provided with online access to Medicare manuals and services bulletins describing proper billing procedures and billing rules and regulations. Providers could only submit claims to Medicare for services they rendered and providers were required to maintain patient records to verify that the services were provided as described on the claim form.

8.      In order to receive reimbursement for a covered service from Medicare, a provider was required to submit a claim, either electronically or using a form (*e.g.*, a CMS-1500 form or UB-92) containing the required information appropriately identifying the provider, patient, and services rendered.

9.      A home health agency was an entity that provided health services, including but not limited to skilled nursing, physical therapy, occupational therapy, and speech pathology services to homebound patients.

**The Home Health Agencies**

10.      Prestige Home Health Services, Inc., ("Prestige") was a Michigan corporation doing business at 950 Stephenson Highway, Suite 100, Troy, Michigan 48083 and was owned by MUHAMMAD AAMIR and USMAN BUTT.  Prestige was a home health agency that purportedly provided in-home physical therapy, occupational therapy, speech pathology, and/or skilled nursing services to patients.  Prestige was a Medicare provider and submitted claims directly to Medicare.

11.      Platinum Home Health Services, Inc., ("Platinum") was a Michigan corporation doing business at 950 Stephenson Highway, Suite 200, Troy, Michigan 48083 and was owned by MUHAMMAD AAMIR.  Platinum was a home health agency that purportedly provided in-

3

home physical therapy, occupational therapy, speech pathology, and/or skilled nursing services to patients. Platinum was a Medicare provider and submitted claims directly to Medicare.

12.     Empirical Home Health Care, Inc., ("Empirical") was a Michigan corporation doing business at 31800 Northwestern Highway, Suite 300, Farmington Hills, Michigan 48334 and was owned in part by MUHAMMAD AAMIR. Empirical is a home health agency that purportedly provided in-home physical therapy, occupational therapy, speech pathology, and/or skilled nursing services to patients. Empirical is a Medicare provider and submitted claims directly to Medicare.

13.     Royal Home Health Care, Inc., ("Royal") was a Michigan corporation doing business at 700 Big Beaver Road, Suite F, Troy, Michigan 48083 and was owned by USMAN BUTT, HEMAL BHAGAT, and SYED SHAH. Royal was a home health agency that purportedly provided in-home physical therapy, occupational therapy, speech pathology, and/or skilled nursing services to patients. Royal was a Medicare provider and submitted claims directly to Medicare.

**The Defendants**

14.     MUHAMMAD AAMIR, a resident of Oakland County, Michigan, was an owner as well as the secretary and treasurer of Prestige, the owner as well as the president, director, and registered agent of Platinum, and an owner as well as the president, director, secretary, and registered agent of Empirical.

15.     USMAN BUTT, a resident of Macomb County, Michigan, was an owner as well as the president, director, and registered agent of Prestige and an owner as well as the president, director, treasurer, and secretary of Royal.

16.     HEMAL BHAGAT, a resident of Oakland County, Michigan, was a physical therapist licensed in the state of Michigan who was an owner of Royal.

4

17.    SYED SHAH, a resident of Oakland County, Michigan, was a physical therapist

licensed in the state of Michigan who was an owner as well as the vice president of Royal.

18.    TAYYAB AZIZ, a resident of Will County, Illinois, was the founder and an

owner of Royal.

19.    TARIQ TAHIR, a resident of Oakland County, Michigan, was a patient recruiter

for Royal.

20.    RAQUEL ELLINGTON, aka RICARDO ELLINGTON, a resident of Oakland

County, Michigan, was a patient recruiter for Prestige and Royal.

## COUNT 1
### (18 U.S.C. § 1349—Health Care Fraud Conspiracy)

**D-1 MUHAMMAH AAMIR**
**D-2 USMAN BUTT**
**D-3 HEMAL BHAGAT**
**D-4 SYED SHAH**
**D-5 TAYYAB AZIZ**
**D-6 TARIQ TAHIR**
**D-7 RAQUEL ELLINGTON**

21.    Paragraphs 1 through 20 of the General Allegations section of this Indictment are

realleged and incorporated by reference as though fully set forth herein.

22.    From in or around July 2010, continuing through the present, the exact dates

being unknown to the Grand Jury, in Wayne County, in the Eastern District of Michigan, and

elsewhere, the defendants, MUHAMMAD AAMIR, USMAN BUTT, HEMAL BHAGAT,

SYED SHAH, TAYYAB AZIZ, TARIQ TAHIR, and RAQUEL ELLINGTON did willfully and

knowingly combine, conspire, confederate, and agree with each other and others, known and

unknown to the Grand Jury, to violate Title 18, United States Code, Section 1347, that is, to

execute a scheme and artifice to defraud a health care benefit program affecting commerce, as

defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means

of materially false and fraudulent pretenses, representations, and promises, money and property
owned by, and under the custody and control of, said health care benefit program, in connection
with the delivery of and payment for health care benefits, items, and services.

### Purpose of the Conspiracy

23.     It was a purpose of the conspiracy for defendants MUHAMMAD AAMIR,
USMAN BUTT, HEMAL BHAGAT, SYED SHAH, TAYYAB AZIZ, TARIQ TAHIR,
RAQUEL ELLINGTON, and others to unlawfully enrich themselves by, among other things:
(a) submitting false and fraudulent claims to Medicare; (b) offering and paying kickbacks and
bribes in the forms of cash payments and/or prescription narcotics to Medicare beneficiaries for
the purpose of such beneficiaries arranging for the use of their Medicare beneficiary numbers by
the conspirators as the bases of claims filed for physical therapy and other services;
(c) concealing the submission of false and fraudulent claims to Medicare, the receipt and transfer
of the proceeds from the fraud, and the payment of kickbacks; and (d) diverting proceeds of the
fraud for the personal use and benefit of the defendants and their co-conspirators.

### Manner and Means

24.     The manner and means by which the defendants and their co-conspirators sought
to accomplish the purpose of the conspiracy included, among others, the following:

25.     A co-conspirator created and incorporated Prestige in or around December 2006.
Prestige would begin billing Medicare for home health services in or around November 2007.

26.     MUHAMMAD AAMIR and USMAN BUTT would purchase Prestige in or
around May 2008.

27.     MUHAMMAD AAMIR, USMAN BUTT, and other co-conspirators would
control the day-to-day operations of Prestige, and would assist co-conspirators in referring

patients to Prestige for physical therapy and other services that were not provided and were not medically necessary.

28.     MUHAMMAD AAMIR and USMAN BUTT would maintain a Medicare provider number for Prestige and would cause the submission of Medicare claims for the cost of physical therapy and other services that were medically unnecessary and were not provided.

29.     MUHAMMAD AAMIR would create and incorporate Platinum in or around February 2009. Platinum would begin billing Medicare for home health services in or around June 2010.

30.     MUHAMMAD AAMIR and other co-conspirators would control the day-to-day operations of Platinum, and would assist co-conspirators in referring patients to Platinum for physical therapy and other services that were not provided and were not medically necessary.

31.     MUHAMMAD AAMIR would maintain a Medicare provider number for Platinum and would cause the submission of Medicare claims for the cost of physical therapy and other services that were not provided and not medically necessary.

32.     Co-conspirators would create and incorporate Excellent Home Care Services, Inc., ("Excellent") in or about February 2007. Excellent would begin billing Medicare for home health services in or around June 2008. Excellent's name would change to Empirical in or around November 2008.

33.     MUHAMMAD AAMIR and co-conspirators would purchase Empirical in or around June 2009.

34.     MUHAMMAD AAMIR and other co-conspirators would control the day-to-day operations of Empirical, and would assist co-conspirators in referring patients to Empirical for physical therapy and other services that were not provided and not medically necessary.

7

35.     MUHAMMAD AAMIR would maintain a Medicare provider number for Empirical and would cause the submission of Medicare claims for the cost of physical therapy and other services that were not provided and not medically necessary.

36.     TAYYAB AZIZ would create and incorporate Royal in or around January 2007. Royal would begin billing Medicare for home health services in or around December 2007.

37.     USMAN BUTT, HEMAL BHAGAT, and SYED SHAH would purchase shares in Royal in or around August 2009.

38.     USMAN BUTT, HEMAL BHAGAT, SYED SHAH, and TAYYAB AZIZ would cause the submission of Medicare claims for physical therapy services and other services that were not provided and not medically necessary.

39.     USMAN BUTT, HEMAL BHAGAT, SYED SHAH, and other co-conspirators would control the day-to-day operations of Royal, and would assist co-conspirators in referring patients to Royal for physical therapy and other services that were not provided and not medically necessary.

40.     USMAN BUTT, HEMAL BHAGAT, and SYED SHAH would maintain a Medicare provider number for Platinum and would cause the submission of Medicare claims for the cost of physical therapy and other services that were not provided and not medically necessary.

41.     Prestige, Platinum, Empirical, and Royal would bill and share many of the same Medicare beneficiaries brought into the scheme

42.     SYED SHAH, TARIQ TAHIR, RAQUEL ELLINGTON, and other co-conspirators would offer and pay kickbacks and bribes in the form of cash to Medicare beneficiaries who were purported patients of Royal.  RAQUEL ELLINGTON and other co-

8

conspirators would also offer and pay kickbacks and bribes in the form of cash to Medicare

beneficiaries who were purported patients of Prestige. The Medicare beneficiaries would receive

cash and other remuneration in exchange for their beneficiary information and signatures on

paperwork to make it appear that they had received home health services, when in fact, those

services were not provided and were not medically necessary.

43.     TARIQ TAHIR, RAQUEL ELLINGTON, and other co-conspirators would

receive kickbacks and bribes from MUHAMMAD AAMIR, USMAN BUTT, HEMAL

BHAGAT, and SYED SHAH and other co-conspirators for each patient they recruited through

this kickback scheme.

44.     Physicians would sign medical documentation ordering physical therapy and

other services purportedly provided and billed to Medicare by Prestige, Platinum, Empirical, and

Royal, which were not provided and not medically necessary.

45.     MUHAMMAD AAMIR, USMAN BUTT, HEMAL BHAGAT, SYED SHAH,

TARIQ TAHIR, and RAQUEL ELLINGTON and other co-conspirators would help fabricate

and falsify medical documents reflecting or supporting purported physical therapy and other

services billed to Medicare that were medically unnecessary and were not provided. Those

documents included home health certifications and plans of care, therapy notes, evaluations,

recertifications, discharges, and other records for therapy that would be billed to Medicare by

Prestige, Platinum, Empirical, and Royal, making it appear that physical therapy and other

services had been provided, when in fact, they had not and were not medically necessary.

46.     MUHAMMAD AAMIR, USMAN BUTT, and RAQUEL ELLINGTON and other

co-conspirators would cause Prestige to submit claims to and receive from Medicare over

$11,981,538.51 for the cost of physical therapy and other services.

9

47.    MUHAMMAD AAMIR and other co-conspirators would cause Platinum to submit claims to and receive from Medicare over $803,784.98 for the cost of physical therapy and other services.

48.    MUHAMMAD AAMIR and other co-conspirators would cause Empirical to submit claims to and receive from Medicare over $3,558,232.34 for the cost of physical therapy and other services.

49.    USMAN BUTT, HEMAL BHAGAT, SYED SHAH, TAYYAB AZIZ, TARIQ TAHIR, RAQUEL ELLINGTON, and other co-conspirators would cause Royal to submit claims to and receive from Medicare over $6,030,658.54 for the cost of physical therapy and other services.

50.    The defendants would transfer and disburse, and cause the transfer and disbursement of, monies from the various corporate accounts of Prestige, Platinum, Empirical, or Royal to themselves and others.

All in violation of Title 18, United States Code, Section 1349.

**COUNTS 2–15**
**(18 U.S.C. §§ 1347 and 2—Health Care Fraud)**

**D-1 MUHAMMAD AAMIR**
**D-2 USMAN BUTT**
**D-3 HEMAL BHAGAT**
**D-4 SYED SHAH**
**D-6 TARIQ TAHIR**
**D-7 RAQUEL ELLINGTON**

51.    On or about the dates enumerated below, at Wayne County and Oakland County, in the Eastern District of Michigan, and elsewhere, MUHAMMAD AAMIR, USMAN BUTT, HEMAL BHAGAT, SYED SHAH, TARIQ TAHIR, and RAQUEL ELLINGTON, in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud a health care benefit

10

program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is,

Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations,

and promises, money and property owned by and under the custody and control of Medicare, in

connection with the delivery of and payment for health care benefits, items, and services.

### Purpose of the Scheme and Artifice

52.     It was the purpose of the scheme and artifice for the defendants and their

coconspirators to unlawfully enrich themselves through the submission of false and fraudulent

Medicare claims for home health services that were medically unnecessary and not performed.

### The Scheme and Artifice

53.     Paragraphs 1 through 50 of this Indictment are realleged and incorporated by

reference as though fully set forth herein as a description of the scheme and artifice.

### Acts in Execution of the Scheme and Artifice

54.     On or about the dates specified as to each count below, in Wayne County and

Oakland County, in the Eastern District of Michigan, and elsewhere, the defendants, in

connection with the delivery of and payment for health care benefits, items, and services, did

knowingly and willfully execute, and attempt to execute, the above-described scheme and

artifice to defraud a health care benefit program affecting commerce, that is, Medicare, and to

obtain, by means of materially false and fraudulent pretenses, representations, and promises,

money and property owned by, and under the custody and control of said health care benefit

program:

| Count | Defendant(s) | Medicare Beneficiary | Company Billing | Approximate Date(s) of Service | Description of Items Billed | Approximate Amount Paid | Date Claim Paid |
|---|---|---|---|---|---|---|---|
| 2 | AAMIR BUTT | D.L. | Prestige | 9/29/09–11/16/09 | Physical Therapy and Skilled Nursing | $3,640.60 | 1/11/10 |
| 3 | AAMIR BUTT | T.S. | Prestige | 8/13/09–9/30/09 | Physical Therapy and Skilled Nursing | $4,868.22 | 11/18/09 |
| 4 | AAMIR BUTT | E.S. | Prestige | 5/23/09–6/13/09 | Physical Therapy and Skilled Nursing | $1,495.84 | 9/17/09 |
| 5 | AAMIR BUTT | M.C. | Prestige | 4/29/11–6/27/11 | Physical Therapy and Skilled Nursing | $5,205.12 | 9/7/11 |
| 6 | AAMIR | M.W. | Platinum | 1/1/11–2/1/11 | Physical Therapy | $4,048.00 | 4/1/11 |
| 7 | AAMIR | R.H. | Empirical | 6/11/11–8/9/11 | Physical Therapy and Skilled Nursing | $3,196.44 | 2/15/12 |
| 8 | BUTT BHAGAT SHAH | D.L. | Royal | 3/31/12–5/17/12 | Physical Therapy and Skilled Nursing | $3,481.06 | 6/18/12 |
| 9 | BUTT BHAGAT SHAH TAHIR | J.R. | Royal | 5/16/11–7/8/11 | Physical Therapy and Skilled Nursing | $5,447.75 | 8/1/11 |
| 10 | BUTT BHAGAT SHAH TAHIR | J.M. | Royal | 4/29/11–6/15/11 | Physical Therapy and Skilled Nursing | $4,635.98 | 7/1/11 |

| Count | Defendant(s) | Medicare Beneficiary | Company Billing | Approximate Date(s) of Service | Description of Items Billed | Approximate Amount Paid | Date Claim Paid |
|-------|--------------|----------------------|-----------------|--------------------------------|-----------------------------|-------------------------|-----------------|
| 11 | BUTT BHAGAT SHAH ELLINGTON | J.G. | Royal | 4/20/11– 6/18/11 | Physical Therapy and Skilled Nursing | $4,635.98 | 7/5/11 |
| 12 | BUTT BHAGAT SHAH ELLINGTON | B.W. | Royal | 4/20/11– 6/18/11 | Physical Therapy and Skilled Nursing | $4,884.15 | 7/5/11 |
| 13 | BUTT BHAGAT SHAH | C.M. | Royal | 5/22/12– 5/22/12 | Physical Therapy and Skilled Nursing | $2,146.97 | 6/7/12 |
| 14 | BUTT BHAGAT SHAH TAHIR ELLINGTON | E.S. | Royal | 5/11/11– 6/30/11 | Physical Therapy | $4,335.78 | 7/25/11 |
| 15 | BUTT BHAGAT SHAH TAHIR | L.B. | Royal | 5/14/11– 6/6/11 | Physical Therapy and Skilled Nursing | $2,025.41 | 7/5/11 |

In violation of Title 18, United States Code, Sections 1347 and 2.

## COUNT 16
### (18 U.S.C. § 371—Conspiracy)

**D-1 MUHAMMAD AAMIR
D-2 USMAN BUTT
D-3 HEMAL BHAGAT
D-4 SYED SHAH
D-6 TARIQ TAHIR
D-7 RAQUEL ELLINGTON**

55.     Paragraphs 1 through 54 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

56.     From in or around May 2010 and continuing through in the present, the exact dates being unknown to the Grand Jury, at Wayne County, in the Eastern District of Michigan,

13

and elsewhere, the defendants, MUHAMMAD AAMIR, USMAN BUTT, HEMAL BHAGAT, SYED SHAH, TARIQ TAHIR, and RAQUEL ELLINGTON and others did willfully, and knowingly combine, conspire, confederate and agree with others, known and unknown to the Grand Jury, to commit certain offenses against the United States, that is,

(a) to violate Title 42, United States Code, Section 1320a-7b(b)(2)(A) by knowingly and, willfully offering or paying any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind in return for referring an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part by Medicare, a Federal health care program as defined in Title 18, United States Code, Section 24(b); and

(b) to violate Title 42, United States Code, Section 1320a-7b(b)(1 )(A) by knowingly and willfully soliciting or receiving any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind in return for referring an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part by Medicare, a Federal health care program as defined in Title 18, United States Code, Section 24(b).

### Purpose of the Conspiracy

57.     It was a purpose of the conspiracy for defendants MUHAMMAD AAMIR, USMAN BUTT, HEMAL BHAGAT, SYED SHAH, TARIQ TAHIR, RAQUEL ELLINGTON, and others to unlawfully enrich themselves by offering, paying, soliciting, and receiving kickbacks and bribes in exchange for the use of Medicare beneficiaries' Medicare numbers.

**Manner and Means**

The manner and means by which the defendants sought to accomplish the purpose of the conspiracy included, among other things:

58.     MUHAMMAD AAMIR and USMAN BUTT would own and control a home health agency in Oakland County, Michigan—Prestige—for the purpose of billing Medicare for purportedly providing in home physical therapy, occupational therapy, speech pathology, and/or skilled nursing services to patients.

59.     USMAN BUTT, HEMAL BHAGAT, and SYED SHAH would own and control a home health agency in Oakland County, Michigan—Royal—for the purpose of billing Medicare for purportedly providing in home physical therapy, occupational therapy, speech pathology, and/or skilled nursing services to patients.

60.     TARIQ TAHIR would operate/incorporate Metro Physical Therapy and Rehabilitation, Inc., in Oakland County, Michigan.

61.     RAQUEL ELLINGTON would operate Angels Supportive Services in Oakland County, Michigan.

62.     MUHAMMAD AAMIR and USMAN BUTT would enter into a kickback arrangement with RAQUEL ELLINGTON where RAQUEL ELLINGTON would pay Medicare beneficiaries in cash to sign up for home health care services.

63.     MUHAMMAD AAMIR and USMAN BUTT would pay RAQUEL ELLINGTON per Medicare beneficiary recruited to Prestige.  These payments were made by checks drawn on Prestige's bank account.  These checks were in exchange for the recruitment of Medicare beneficiaries to be billed by Prestige for home health physical therapy services.

15

64.     USMAN BUTT, HEMAL BHAGAT, and SYED SHAH would enter into a kickback arrangement with TARIQ TAHIR where TARIQ TAHIR would pay Medicare beneficiaries in cash to sign up for home health care services.

65.     USMAN BUTT, HEMAL BHAGAT, and SYED SHAH would pay TARIQ TAHIR per Medicare beneficiary recruited to Royal. These payments were made by checks drawn on Royal's bank account. These checks were in exchange for the recruitment of Medicare beneficiaries to be billed by Royal for home health physical therapy services.

66.     USMAN BUTT, HEMAL BHAGAT, and SYED SHAH would enter into a kickback arrangement with RAQUEL ELLINGTON where RAQUEL ELLINGTON would pay Medicare beneficiaries in cash to sign up for home health care services.

67.     USMAN BUTT, HEMAL BHAGAT, and SYED SHAH would pay RAQUEL ELLINGTON per Medicare beneficiary recruited to Royal. These payments were made by checks drawn on Royal's bank account. These checks were in exchange for the recruitment of Medicare beneficiaries to be billed by Royal for home health physical therapy services.

68.     SYED SHAH would also pay Medicare beneficiaries directly in cash to sign up for home health care services to be billed by Royal to Medicare. These payments were made from funds taken from the Royal bank account.

69.     MUHAMMAD AAMIR and USMAN BUTT would then bill Medicare through Prestige for home health care services that were purportedly provided to beneficiaries paid by RAQUEL ELLINGTON, even though the services were never actually rendered and/or were not medically necessary.

70.     USMAN BUTT, HEMAL BHAGAT, and SYED SHAH would then bill Medicare through Royal for home health care services that were purportedly provided to

16

beneficiaries paid by TARIQ TAHIR, RAQUEL ELLINGTON, and SYED SHAH, even though the services were never actually rendered and/or were not medically necessary.

71.     MUHAMMAD AAMIR and USMAN BUTT would pay RAQUEL ELLINGTON more than $4,500.00 for Medicare beneficiary recruitment. In exchange for these payments, MUHAMMAD AAMIR and USMAN BUTT would receive Medicare beneficiaries recruited by RAQUEL ELLINGTON to Prestige over a period of several months.

72.     USMAN BUTT, HEMAL BHAGAT, and SYED SHAH would pay TARIQ TAHIR more than $137,385.00 for Medicare beneficiary recruitment. In exchange for these payments, USMAN BUTT, HEMAL BHAGAT, and SYED SHAH would receive Medicare beneficiaries recruited by TARIQ TAHIR to Royal over a two-year period.

73.     USMAN BUTT, HEMAL BHAGAT, and SYED SHAH would pay RAQUEL ELLINGTON more than $21,000.00 for Medicare beneficiary recruitment. In exchange for these payments, USMAN BUTT, HEMAL BHAGAT, and SYED SHAH would receive Medicare beneficiaries recruited by RAQUEL ELLINGTON to Royal over a two-year period.

### Overt Acts

In furtherance of the conspiracy, and to accomplish its purposes and objects, at least one of the conspirators committed, or caused to be committed, in the Eastern District of Michigan, the following overt acts, among others:

74.     On or about October 29, 2009, MUHAMMAD AAMIR and USMAN BUTT paid RAQUEL ELLINGTON $3,750.00 by check drawn from the Prestige bank account in exchange for patient recruiting.

75.     On or about August 5, 2011, USMAN BUTT, HEMAL BHAGAT, and SYED SHAH paid TARIQ TAHIR $1,900.00 by check drawn from the Royal bank account in exchange for patient recruiting.

76.     On or about May 23, 2011, USMAN BUTT, HEMAL BHAGAT, and SYED SHAH paid RAQUEL ELLINGTON $3,000.00 by check drawn from the Royal bank account in exchange for patient recruiting.

All in violation of Title 18, United States Code, Section 371.

## COUNT 17
### (18 U.S.C. § 1956(h)—Money Laundering Conspiracy)

**D-2 USMAN BUTT**
**D-3 HEMAL BHAGAT**
**D-4 SYED SHAH**
**D-5 TAYYAB AZIZ**

77.     Paragraphs 1 through 50 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

78.     From in or about March 2010 through in or around March 2012, through an entity known as Unique Home Health Care LLC, in Oakland County, in the Eastern District of Michigan, and elsewhere, the defendants, USMAN BUTT, HEMAL BHAGAT, SYED SHAH, and TAYYAB AZIZ did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly combine, conspire, and agree with other persons, known and unknown to the Grand Jury, to commit offenses against the United States in violation of Title 18, United States Code, Sections 1956 and Section 1957, to wit:

   a.     to knowingly conduct a financial transaction affecting interstate and foreign commerce, which in fact involved the proceeds of specified unlawful activity, knowing that the property involved in the financial transaction represented the

18

proceeds of some form of unlawful activity, and knowing that the transaction was

designed in whole and in part to conceal and disguise the nature, the location, the

source, the ownership, and the control of the proceeds of specified unlawful

activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i);

b.      to knowingly engage in a monetary transaction by, through, and to a financial

institution, affecting interstate and foreign commerce, in criminally derived

property of a value greater than $10,000, such property having been derived from

specified unlawful activity, in violation of Title 18, United States Code, Section

1957.

It is further alleged that the specified unlawful activity is health care fraud, in violation of

Title 18, United States Code, Section 1347.

All in violation of Title 18, United States Code, Section 1956(h).

## COUNT 18
### (18 U.S.C. § 1956(h)—Money Laundering Conspiracy)

### D-2 USMAN BUTT
### D-5 TAYYAB AZIZ

79.      Paragraphs 1 through 50 of this Indictment are realleged and incorporated by

reference as though fully set forth herein.

80.      From in or about September 2008 through in or around July 2010, through an

entity known as Quickstar Consulting, in Oakland County, in the Eastern District of Michigan,

and elsewhere, the defendants, USMAN BUTT and TAYYAB AZIZ did willfully, that is, with

the intent to further the objects of the conspiracy, and knowingly combine, conspire, and agree

with other persons, known and unknown to the Grand Jury, to commit offenses against the

United States in violation of Title 18, United States Code, Sections 1956 and Section 1957, to wit:

     a.     to knowingly conduct a financial transaction affecting interstate and foreign commerce, which in fact involved the proceeds of specified unlawful activity, knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, and knowing that the transaction was designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i);

     b.     to knowingly engage in a monetary transaction by, through, and to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, such property having been derived from specified unlawful activity, in violation of Title 18, United States Code, Section 1957.

It is further alleged that the specified unlawful activity is health care fraud, in violation of Title 18, United States Code, Section 1347.

All in violation of Title 18, United States Code, Section 1956(h).

### FORFEITURE ALLEGATIONS
(18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461;
18 U.S.C. § 982(a)(7)—Criminal Forfeiture)

81.     The above allegations contained in this Indictment are incorporated by reference as if set forth fully herein for the purpose of alleging forfeiture pursuant to the provisions of Title 18, United States Code, Sections 981 and 982, and Title 28, United States Code, Section 2461.

82.     As a result of the violation of Title 18, United States Code, Section 1349, as set forth in this Indictment, defendants MUHAMMAD AAMIR, USMAN BUTT, HEMAL BHAGAT, SYED SHAH, TAYYAB AZIZ, TARIQ TAHIR, and RAQUEL ELLINGTON shall forfeit to the United States any property, real or personal, constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of such violation, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461.

83.     As a result of the violations of Title 18, United States Code, Sections 1347 and 2, as set forth in this Indictment, defendants MUHAMMAD AAMIR, USMAN BUTT, HEMAL BHAGAT, SYED SHAH, TARIQ TAHIR, and RAQUEL ELLINGTON shall forfeit to the United States any property, real or personal, that constitutes or is derived from, gross proceeds traceable to the commission of such violations, pursuant to 18 U.S.C. § 982(a)(7).

84.     As a result of the violations of Title 18, United States Code, Sections 1956 and 2, as set forth in this Indictment, defendants USMAN BUTT, HEMAL BHAGAT, SYED SHAH, and TAYYAB AZIZ shall forfeit to the United States any property, real or personal, involved in said violations, or any property traceable to such property, pursuant to 18 U.S.C. § 982(a)(1).

85.     As a result of the violations of Title 18, United States Code, Sections 1957 and 2, as set forth in this Indictment, defendants USMAN BUTT, HEMAL BHAGAT, SYED SHAH, and TAYYAB AZIZ shall forfeit to the United States any property, real or personal, involved in said violations, or any property traceable to such property, pursuant to 18 U.S.C. § 982(a)(1).

86.     Substitute Assets:  If the property described above as being subject to forfeiture, as a result of any act or omission of the defendants:

        a.     Cannot be located upon the exercise of due diligence;

        b.     Has been transferred or sold to, or deposited with, a third party;

21

      c.     Has been placed beyond the jurisdiction of the Court;

      d.     Has been substantially diminished in value; or

      e.     Has been commingled with other property that cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p) as incorporated by 18 U.S.C. § 982(b) and/or 28 U.S.C. § 2461, to seek to forfeit any other property of the defendants up to the value of the forfeitable property described above.

87.    Money Judgment: A sum of money equal to at least $22,374,214.37 in United States currency, or such amount as is proved at trial in this matter, representing the total amount of proceeds obtained as a result of the violations of 18 U.S.C. §§ 1349 and 1347, and representing the total amount involved in the violations as alleged in this Indictment.

THIS IS A TRUE BILL.

s/GRAND JURY FOREPERSON
Grand Jury Foreperson

BARBARA L. MCQUADE
United States Attorney

s/WAYNE F. PRATT
WAYNE F.PRATT
Chief, Health Care Fraud Unit
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, Michigan 48226
(313) 226-2548
wayne.pratt@usdoi.gov

s/NIALL M. O'DONNELL
NIALL M. O'DONNELL
Trial Attorney
Criminal Division, Fraud Section
U.S. Department of Justice
1400 New York Avenue, N.W., Third Floor
Washington, D.C. 20005
(202) 257-3295
(313) 226-9616
niall.odonnell@usdoj.gov

| United States District Court<br>Eastern District of Michigan | Criminal Case C | Case:2:13-cr-20039<br>Judge: Friedman, Bernard A.<br>MJ: Majzoub, Mona K.<br>Filed: 01-15-2013 At 04:06 PM<br>USA V SEALED MATTER (EB) |
|---|---|---|

NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to

## Reassignment/Recusal Information This matter was opened in the USAO prior to August 15, 2008   [ ]

| Companion Case Information | Companion Case Number: |
|---|---|
| This may be a companion case based upon LCrR 57.10 (b)(4)[1]: | Judge Assigned: |
| ☐ Yes        ☐ No | AUSA's Initials: |

Case Title:

    USA v.  D-1 MUHAMMAD AAMIR,
    D-2 USMAN BUTT,
    D-3 HEMAL BHAGAT,
    D-4 SYED SHAH,
    D-5 TAYYAB AZIZ,
    D-6 TARIQ TAHIR, and
    D-7 RAQUEL ELLINGTON, aka RICARDO ELLINGTON,

# ORIGINAL

County where offense occurred : WANE ___  WAYNE _____

Check One:        ☐ **Felony**         ☐ **Misdemeanor**        ☐ **Petty**

    XX__Indictment/____Information --- **no** prior complaint.
    ____Indictment/____Information --- based upon prior complaint [Case number: ]
    ____Indictment/____Information --- based upon LCrR 57.10 (d) [Complete Superseding section below].

## Superseding Case Information

Superseding to Case No: _____        Judge: _____
    ☐    Original case was terminated; no additional charges or defendants.
    ☐    Corrects errors; no additional charges or defendants.
    ☐    Involves, for plea purposes, different charges or adds counts.
    ☐    Embraces same subject matter but adds the additional defendants or charges below:

| **Defendant name** | **Charges** | **Prior Complaint (if applicable)** |
|---|---|---|

**Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.**

January 15, 2013
Date

Niall M. O'Donnell
Trial Attorney
Criminal Division, Fraud Section
U.S. Department of Justice
211 W. Fort Street, Suite 2001
Detroit, MI 48226
(202) 257-3292
(313) 226-9616
niall.odonnell@usdoj.gov

Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, (2) the same or related parties are present, and the cases arise out of the
same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.

10/13/09